AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JOSE SANTANA, RAFELINA GABRIEL | ) | Case No. 11-8279-LRJ |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  June 2, 2011 through on or about July 4, 2011  in the county of  Palm Beach  in the Southern District of Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sec. 963 | did knowingly and intentionally combine, conspire, confederate and agree to import into the United States from a place outside thereof, a Schedule I narcotic controlled substance, to wit: heroin |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

DEA Special Agent David F. Huang
Printed name and title

Sworn to before me and signed in my presence.

Date:  07/15/2011

_____
Judge's signature

City and state:  West Palm Beach, Florida        U.S. Magistrate Judge Linnea R. Johnson
Printed name and title

## AFFIDAVIT IN SUPPORT OF ARREST

I, David F. Huang, Special Agent of the Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, deposes and states:

1. I have been employed as a Special Agent of the DEA since January 1997. During my employment with DEA, I have been assigned to the Los Angeles Field Division, Los Angeles, California the Miami Field Division Office, Miami, Florida and the West Palm Beach, Florida, Resident Office. I am currently assigned to the Fort Lauderdale District Office. Prior to my employment with DEA I was employed by the New York City Police Department for 15 years, 3 years as a Patrolman and 12 years as a Detective assigned to the Organized Crime Control Bureau, conducting narcotics and organized crime violations of Federal and New York State Penal codes.

2. I have participated in numerous narcotics and money laundering investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants. Through my training, education, and experience, which has included debriefing cooperating drug traffickers, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement, as well as methods used to finance drug transactions and launder drug proceeds.

3. This affidavit is based upon an ongoing drug investigation, conversations with other law enforcement officers, information obtained through confidential sources,

1

information obtained through the use of subpoenas, surveillance, training and experience and the events and circumstances as set forth below.

4. The information contained in this affidavit is submitted for the sole purpose of establishing probable cause for a criminal complaint for Jose SANTANA (a/k/a "Leonel", a/k/a "Leo"), and Rafelina GABRIEL.

5. Since about May 2011, a DEA confidential source (CS) began to engage in consensually recorded telephone conversations with the Source of Supply ("SOS"). During these recorded conversations, SOS and the CS discussed the importation of heroin and cocaine from Guatemala to the United States. These conversations consisted of discussions regarding types of transportation utilized to smuggle the narcotics, expenses necessary to smuggle the narcotics, payment for smuggling the narcotics, and future smuggling ventures.

6. During the week of June 19, 2011, as negotiated between SOS and the CS, SOS wired the CS approximately $954.00 to be utilized by the CS to travel to Guatemala. On or about June 24, 2011, after the CS received the money, the CS traveled to Guatemala City, Guatemala for the purpose of meeting SOS, retrieve one kilogram of heroin, and import the kilogram of heroin into the United States.

7. While in Guatemala, City, Guatemala, on June 28, 2011, SOS who was accompanied by an unknown male met the CS at a Burger King parking lot. During the meeting, the unknown male provided the CS with over one kilogram of heroin. The kilogram of heroin was contained inside 15 packages of powder soup divided inside two boxes. In addition, the CS advised that SOS called his "Boss" who SOS referred to as "Mr. Big" the call was answered and was immediately terminated. Shortly afterwards, SOS "Mr. Big", contacted the unknown male's cellular telephone, the unknown male

handed the telephone to the CS. The CS said "Mr. Big" acknowledged that the CS would be smuggling the kilogram of heroin from Guatemala to South Florida and then to New York.

8.   Following this meet, the CS met with agents in Guatemala City, Guatemala and transferred custody of the kilogram of heroin to the agents. The kilogram of heroin remained with the agents who transported the heroin to the United States on July 1, 2011.

9.   Since returning to South Florida, the CS made and received a series of recorded telephone calls with SOS, "Mr. Big", Rafelina GABRIEL, and Jose SANTANA a/k/a "Leonel", a/k/a "Leo" regarding the delivery of the kilogram of heroin from South Florida to New York, and the CS' payment for smuggling the heroin from Guatemala to the United States. It was agreed upon that SANTANA would send GABRIEL via automobile from New York to South Florida to retrieve the kilogram of heroin from the CS.

10.   On June 30, 2011, the CS spoke to SANTANA, and SANTANA informed the CS that he would be sending "the females" to the CS. The CS told SANTANA to send them to the city of Delray Beach, Florida. SANTANA said he would have her call the CS. Following this, GABRIEL contacted the CS and told the CS she would be the female coming to see the CS. The female told the CS to text the address to the number she called the CS. On July 1, 2011, the CS placed a recorded telephone call to SANTANA and asked how much money the CS would be getting. SANTANA told the CS he did not know, but that he gave GABRIEL "3000 when she left New York." The

3

CS told SANTANA that the CS was supposed to get "10,000 from the female", and wanted SANTANA to call to verify this.

11. On July 2, 2011, agents from the DEA and the Palm Beach County Sheriff's Office met the CS in the area of Woolbright Road and I95, Boynton Beach, Florida for the purpose of transferring one kilogram of heroin to GABRIEL when she arrived (It should be noted that the kilogram of heroin remained in the custody of the DEA, and it was replaced with a substance that resembled the kilogram of heroin which was placed in the same boxes the kilogram of heroin was received by the CS in Guatemala City, Guatemala).

12. While waiting for GABRIEL to arrive, the CS made a series of recorded telephone calls to SANTANA, SOS and GABRIEL regarding the location of the meet, and how much money the CS would receive for the smuggling of the heroin. At approximately 11:30 a.m., surveillance observed GABRIEL arrive at the Burger King parking lot located on the north side of Woolbright Road west of I95. She was in a BMW, MA 566KZ4 registered to Luis Alberto Luna-PEREZ. Agents observed the CS meet with GABRIEL who was accompanied by another female.

13. During the meet, the CS gave GABRIEL the "fake" heroin packages contained inside two soup boxes and further contained inside a white plastic bag. GABRIEL provided the CS with approximately $4,000 for smuggling the heroin to the United States. In addition, prior to meeting GABRIEL, the CS was provided a recording device, and during the meeting a one sided telephone conversation was captured between SANTANA and the CS. This conversation indicated everything was alright and that GABRIEL just received the heroin. Tolls of GABRIEL's cellular telephone also indicated contact with SANTANA during this time period.

14. Following the meeting, the CS departed. Agents observed the other female manipulating items in the trunk and walking over to GABRIEL who was sitting in the rear driver's side passenger seat of the BMW. Agents observed the other female remove the plastic bags containing the "fake" heroin, and hand them to GABRIEL who was on her cellular telephone. GABRIEL who continued to talk on the phone began moving bags in the trunk as the other female watched her. A short period of time later, the other female removed the items that GABRIEL was looking at, and handed the empty soup boxes to the child who discarded the boxes in a trash can located outside of Burger King. GABRIEL exited the vehicle and returned to the back of the vehicle with the other female where they studied the trunk before closing it.

15. A short period of time later, GABRIEL, the other female and the child departed the Burger King. Following their departure, agents retrieved two empty soup boxes which had contained the "fake" heroin and a blue plastic bag from the garbage can outside of the Burger King.

16. Agents followed GABRIEL, the other female and the child to the area of Glades Road and I95 South, where Palm Beach County Sheriff's Office Agents conducted a traffic stop on the BMW. While searching the vehicle, agents located two plastic bags that contained grocery items that were previously provided to GABRIEL from the CS but not the bag containing the soup boxes. The Palm Beach County Sheriff's Office Agents were unable to locate the actual "fake heroin". GABRIEL, the other female, and the child were then released.

17. Following this, the CS received a series of recorded telephone calls from

5

SANTANA, GABRIEL, SOS and "Mr. Big" regarding the "fake heroin". SANTANA indicated that the BMW had a trap in it, and he wanted to know what happened to the heroin. SANTANA said he is trying to contact "Mr. Big" in Guatemala to discover what happened, but there is no answer. In a recorded call with the CS, GABRIEL said SANTANA gave her permission to open the boxes because they did not fit in the trap of the vehicle, and indicated the police took the other bags. SOS passed the phone to FNU "Mr. Big" who told the CS the CS better straighten this out or he will kill the CS. "Mr. Big" also questioned the CS for taking the heroin to Miami, Florida instead of going straight to New York, and accused the CS of selling the heroin for which he wanted the CS to pay him $75,000.00.

DAVID F. HUANG, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me
this ___ of July, 2011.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

# **BOND RECOMMENDATION**

<u>JOHN M. SANTANA</u>
Defendant

<u>PRETRIAL DETENTION</u> is recommended as to defendant.

A. LOTHROP MORRIS
ASSISTANT UNITED STATES ATTORNEY

# BOND RECOMMENDATION

__RAFELINA GABRIEL__
Defendant

PRETRIAL DETENTION is recommended as to defendant.

_____
A. LOTHROP MORRIS
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-8279-LRJ

IN RE:

CRIMINAL COMPLAINT
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 1999? ____ Yes __X__ No

   If yes was it pending in the central region?

   ____ Yes __X__ No

2. Did this matter originate from a matter pending in the the Narcotics Section (Miami) United States Attorney's Office prior to April 1, 2003? ____ Yes __X__ No

3. Did this matter originate from a matter pending in the United States Attorney's Office prior to May 18, 2003? ____ Yes __X__ No

4. Did this case originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? ____ Yes __X__ No

Respectfully submitted,

WIFREDO FERRER
UNITED STATES ATTORNEY

BY: _____
A. LOTHROP MORRIS
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 95044
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401-6235
TEL (561) 820-8711
FAX (561) 820-8777
LothropMorris@usdoj.gov